

PAE AO 241
(Rev. 07/10)

Page 4

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

*18·CV-1526*

| United States District Court | District:  Eastern District of Pennsylvania |
|---|---|
| **Name (under which you were convicted):** DANIEL LEWIS | **Docket or Case No.:** CP-51-CR-1201581-2005 |
| **Place of Confinement:** SCI-Graterford | **Prisoner No.:** HF3762 |
| **Petitioner** (Include the name under which you were convicted): Naseer Shakur, A/K/A DANIEL LEWIS | **Respondent** (Name of Warden, Superintendent, Jailor, or authorized person having custody of petitioner): Cynthia Link, Supt. SCI-Graterford |

v.

**The District Attorney of the County of:** Philadelphia

and

**The Attorney General of the State of:** Pennsylvania

---

### PETITION

1.  (a)  Name and location of court that entered the judgment of conviction you are challenging:

Court of Common Pleas of Philadelphia

(b)  Criminal docket or case number (if you know): CP-51-CR-1201581-2005

2.  (a)  Date of judgment of conviction (if you know): September 19, 2007

(b)  Date of sentencing: I was also sentenced on the above date

3.  Length of sentence: Life without parole plus 6-12

4.  In this case, were you convicted on more than one count or of more than one crime?   ☑ Yes   ☐ No

5.  Identify all crimes of which you were convicted and sentenced in this case: First degree murder, Violation of uniform firearms act, Possession of instrument

PAE AO 241
(Rev. 07/10)                                                                 Page 5

_of crime_

6.    (a)    What was your plea?  (Check one)

        ☑(1)   Not Guilty        ☐(3)   Nolo contendere (no contest)

        ☐(2)   Guilty            ☐(4)   Insanity plea

     (b)   If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge,
           what did you plead guilty to and what did you plead not guilty to? _N/A_

     (c)   If you went to trial, what kind of trial did you have?  (Check one)

        ☑     Jury           ☐     Judge only

7.    Did you testify at a pretrial hearing, trial, or a post-trial hearing?

        ☐     Yes           ☑     No

8.    Did you appeal from the judgment of conviction?

        ☑     Yes           ☐     No

9.    If you did appeal, answer the following:
     (a)   Name of court: _PA. Superior Court_
     (b)   Docket or case number (if you know): _2566 EDA 2007_
     (c)   Result: _Judgement of lower Court affirmed_
     (d)   Date of result (if you know): _July 22, 2009_
     (e)   Citation to the case (if you know): _Opinion was unpublished_
     (f)   Grounds raised: _Evidence was insufficient, trial Court abused_
_discretion, trial Court erred in denying motion for mistrial,_
_trial Court erred in answering Jury question as to the difference_
_of first and third degree,_

PAE AO 241
(Rev. 07/10)                                                Page 6

    (g)    Did you seek further review by a higher state court?    ☑ Yes    ☐ No

            If yes, answer the following)

            (1) Name of court: _Pa. Supreme Ct. (Nunc pro Tunc)_

            (2) Docket or case number (if you know): _____

            (3) Result: _Denied_

            (4) Date of result (if you know): _Oct. 5, 2012_

            (5) Citation to the case (if you know): _Unknown_

            (6) Grounds raised: _Same as in Section 9_

    (h)    Did you file a petition for certiorari in the United States Supreme Court?    ☐ Yes    ☑ No

            If yes, answer the following:

            (1) Docket or case number (if you know): _____

            (2) Result: _____

            (3) Date of result (if you know): _____

            (4) Citation to the case (if you know): _____

10.    Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?    ☑ Yes    ☐ No

11.    If your answer to Question 10 was "Yes," give the following information:

    (a)    (1) Name of court: _Common Pleas Court of Phila_

            (2) Docket or case number (if you know): _CP-51-CR-120158/-2005_

            (3) Date of filing (if you know): _Sept. 23. 2013_

            (4) Nature of the proceeding: _PCRA (Post Conviction petition)_

            (5) Grounds raised: _lawyer Gary Server filed a Finley letter on my petition._

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes     ☑ No

(7) Result: _____

(8) Date of result (if you know): _____

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: _Common Pleas Court of Phila_

(2) Docket or case number (if you know): _CP-51-CR-120158I-2005_

(3) Date of filing (if you know): _January 16, 2018_

(4) Nature of the proceeding: _PCRA_

(5) Grounds raised: _Miscarriage of Justice_

_All ineffective assistance claims as to appellant_

_Counsel_ _(still on going)_

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes     ☑ No

(7) Result: _____

(8) Date of result (if you know): _____

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _N/A_

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

PAE AO 241
(Rev. 07/10)

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes          ☐ No

(7) Result: _____ *N/A* _____

(8) Date of result (if you know): ____ *N/A* ____

(d)   Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion:

(1)   First petition:      ☐ Yes      ☑ No

(2)   Second petition:     ☐ Yes      ☑ No

(3)   Third petition:      ☐ Yes      ☑ No

(e)   If you did not appeal to the highest state court having jurisdiction, explain why you did not:

*Brakedown in Court process* _____

_____

12.   For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.

**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court.  Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

**GROUND ONE:** *See attached (Habeas Grounds for relief)*

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

PAE AO 241
(Rev. 07/10)

(b) If you did not exhaust your state remedies on Ground One, explain why: _____

_____

_____

_____

(c) **Direct Appeal of Ground One:**

   (1) If you appealed from the judgment of conviction, did you raise this issue?

   ☑   Yes                ☐   No

   (2) If you did not raise this issue in your direct appeal, explain why? _____

   _____

   _____

(d) **Post-Conviction Proceedings:**

   (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a
   state trial court?

   ☐   Yes                ☑   No

   (2) If your answer to Question (d)(1) is "Yes," state:

   Type of motion or petition: _____

   Name and location of the court where the motion or petition was filed: _____

   _____

   Docket or case number (if you know): _____

   Date of the court's decision: _____

   Result (attach a copy of the court's opinion or order, if available): _____

   _____

   _____

   (3) Did you receive a hearing on your motion or petition?          ☐   Yes        ☐   No

   (4) Did you appeal from the denial of your motion or petition?     ☐   Yes        ☐   No

   (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

   ☐   Yes                ☐   No

   (6) If your answer to Question (d)(4) is "Yes," state:

   Name and location of the court where the appeal was filed: _____

   _____

   Docket or case number (if you know): _____

   Date of the court's decision: _____

PAE AO 241
(Rev. 07/10)

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7)  If your answer to Question (d)(4) or Question (d)(5) is  "No," explain why you did not raise

this issue: _____

_____

_____

_____

_____

(e)      **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies,

etc.)  that you have used to exhaust your state remedies on Ground One: _____

_____

_____

**GROUND TWO:** ___ _See Attached (Habeas, Grounds for relief)_ ___

_____

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Two, explain why: _____

_____

_____

_____

(c) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

☐    Yes              ☐    No

PAE AO 241
(Rev. 07/10)

(2) If you did not raise this issue in your direct appeal, explain why? _____

_____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a

state trial court?

☐ Yes       ☑ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____ ( See Attachment )

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?          ☐ Yes      ☐ No

(4) Did you appeal from the denial of your motion or petition?     ☐ Yes      ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☐ Yes       ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7)  If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise

this issue: _____

_____

_____

_____

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two: _____

_____

_____

_____

**GROUND THREE:** *See Attached (Habeas Grounds for relief)*

_____

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Three, explain why: _____

_____

_____

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

☑ Yes          ☐ No

(2) If you did not raise this issue in your direct appeal, explain why? _____

_____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes          ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____
_____ See Attachment _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____
_____
_____

(3) Did you receive a hearing on your motion or petition?  ☐ Yes  ☐ No

(4) Did you appeal from the denial of your motion or petition?  ☐ Yes  ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?
    ☐ Yes     ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____
_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____
_____
_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise
this issue: _____
_____
_____
_____

(e)  **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies,
etc.) that you have used to exhaust your state remedies on Ground Three: _____
_____

**GROUND FOUR:** _See Attached (Habeas Grounds for relief)_

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):
_____

PAE AO 241
(Rev. 07/10)

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____

_____

_____

_____

(c) **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

☐   Yes            ☐   No

(2) If you did not raise this issue in your direct appeal, explain why? __IAC_____

_____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a

state trial court?

☐   Yes        ☑   No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____(See Attachment)_____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?        ☐   Yes        ☐   No

(4) Did you appeal from the denial of your motion or petition?    ☐   Yes        ☐   No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

      ☐   Yes         ☐   No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(7)  If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

_____

_____

_____

     (e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.)  that you have used to exhaust your state remedies on Ground Four: _____

_____

_____

_____

_____

_____

13.     Please answer these additional questions about the petition you are filing:

     (a)     Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?     ☐   Yes     ☐   No

          If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: _____

_____

_____

_____

PAE AO 241
(Rev. 07/10)

(b)    Is there any ground in this petition that has not been presented in some state or federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them: _____

_____

_____

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?    ☐ Yes    ☑ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available. _____

_____

_____

_____

_____

_____

15.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?    ☑ Yes    ☐ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised: *PCRA Petition at CP-51-CR-1201581-2005 I iniated a second petition under Government interrence to exhaust my Ineffective assistance of appellant Counsel Claims*

16.    Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a)    At preliminary hearing: _____

(b)    At arraignment and plea: _____

(c)     At trial: _____

_____

(d)     At sentencing: _____

_____

(e)     On appeal: _____

_____

(f)     In any post-conviction proceeding: _____

_____

(g)     On appeal from any ruling against you in a post-conviction proceeding: _____

_____

_____

17.     Do you have any future sentence to serve after you complete the sentence for the judgment that you are
        challenging?                              ☐ Yes        ☑ No

        (a)     If so, give the name and location of the court that imposed the other sentence you will serve in the
                future: _____

                _____

        (b)     Give the date the other sentence was imposed: _____

        (c)     Give the length of the other sentence: _____

        (d)     Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be
                served in the future?              ☐ Yes        ☐ No

18.     **TIMELINESS OF PETITION:** If your judgment of conviction became final over one year ago, you must
        explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your
        petition*   _See Attachment (Timeliness of Petition)_

        _____

        _____

        _____

        _____

        _____

_____
_____
_____
_____
_____

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1)    A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court.  The limitation period shall run from the latest of -

    (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

    (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: _New trial on all Claims where Such relief would apply. Dismissal and Discharge on my Judicial misConduct Claims._

or any other relief to which petitioner may be entitled.

_____
Signature of Attorney (if any)

PAE AO 241
(Rev. 07/10)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on _____2.28.18_____.

(month, date, year)

Executed (signed) on _____2.28.18_____ (date).

_____

Signature of Petitioner

If the person signing is not the petitioner, state the relationship to petitioner and explain why petitioner is not signing this petition. _____

_____

_____

_____

_____

IN THE UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| Naseer Shakur, A/K/A DANIEL LEWIS | : | No. _____ |
| Petitioner, | : | |
| v. | : | |
| | | HABEAS  PETITION |
| Cynthia Link, SCI-Graterford Superintendent | : | |

# HABEAS GROUNDS FOR RELIEF

Naseer Shakur, Pro se (LEWIS)
HF3762/SCI-Graterford
Box 244
Graterford, PA 19426

Date: 2.26.18

## TABLE OF CONTENTS

Statement of Exhaustion and Procedural Default.............................................. (ii)

Martinez v. Ryan statement of Grounds........................................................ pg. 1

Ground One...................................................................................... pg.2

Ground Two...................................................................................... pg. 3

Ground Three.................................................................................... pg. 3

Ground Four..................................................................................... pg. 3

Ground Five...................................................................................... pg. 5

Ground Six....................................................................................... pg. 6

Ground Seven.................................................................................... pg. 9

Ground Eight.................................................................................... pg. 9

Ground Thirteen................................................................................. pg. 17

Direct Appeal Issues............................................................................ pg. 11

Ground Nine..................................................................................... pg. 12

Ground Ten...................................................................................... pg. 13

Ground Eleven................................................................................... pg. 14

Ground Twelve................................................................................... pg. 16

Timeliness of Habeas Petition.................................................................. pg. 18

Declaration of Truth............................................................................ pg. 20

(i)

STATEMENT OF EXHAUSTION AND PROCEDURAL DEFAULT

Because I anticipate that exhaustion will be an issue in this petition, primarily because of the serial ineffectiveness of counsel I've suffered in the state proceedings, I would like to make a statement providing an explanation to the court where my grounds for relief stand in relation to exhaustion and default.

Grounds 1 through 8 plus 13 are claims that I will argue in memorandum that procedural default can be lawfully excused because they fall under the Martinez exception due to the ineffectiveness of PCRA counsel who filed a no-merit letter in the initial review stages of my PCRA (state collateral petition) without raising any claims for relief. There is also other exceptions that may apply simultaneously to some of these claims. Grounds 9,10,11 are claims that were exhausted on direct appeal by appellant counsel on my original direct appeal, they have actually made one round in the state courts. Although I will add that my nunc pro tunc petition of allowance of appeal to the PA Supreme Court was denied on October 5, 2012. Ground 12 is an issue that was properly preserved in the trial court and that direct appeal counsel raised in my original direct appeal, but defaulted the claim by not briefing or arguing the claim to the PA Superior Court. In memorandum I will argue that procedural default should be excused because of government interference among any other exceptions that may apply.

## PROCEDURAL HISTORY OF THE COLLATERAL STATE PETITION

On September 20, 2013 I placed into the institutional mail at the state correctional institute at Fayette a standard PCRA pre-printed form that the institution provides to indigent pro se prisoners, who decide to collaterally challenge their convictions. The petition was formally accepted for filing by the clerk of the Court of Common Pleas in Philadelphia on September 23, 2013. Seven months later in April of 2014 the courts finally appointed me an attorney by the name of Dennis Turner (Exhibit J). However, I was never informed by the court of Dennis Turner's appointment**[FN7]**. So, for the next 16 months from April 2014 to about August 2015, I didn't even know that counsel had been appointed, because it wasn't until August 2015 that Dennis Turner decide to contact me for the first time informing me of his appointment (Exhibit K). After Dennis Turner contacted me by mail, which included his phone number, I placed his number on my institutional phone list (Exhibit L). I spoke to Dennis Turner one time  after that I never heard from him again and was unable to contact him. In June of 2016 I filed a motion for appointment of new counsel. PCRA Judge Barbara McDermott ordered  status hearings for the PCRA, Dennis Turner never showed up for the status hearings. Without formally granting an order as to my motion Judge Barbara McDermott appointed new counsel on July 5, 2016, his name is Gary Server. I informed Gary Server that I had claims I would like him to raise, some of which I raise in this habeas petition. Gary Server contacted me and informed me that he would look over the record of my case and get back to me. I was placed in the RHU on August 26, 2016 over an issue concerning me taking a urine, a urine that ultimately came back with negative results for drugs. Because of this situation I was unable to make a list of claims I wanted counsel to raise in the petition due to the fact that when you are place in the RHU at Graterford you are not automatically given your legal property like in other institutions. So, I didn't have access to my legal property. Coincidently, the same day I was released from the RHU (September 8, 2016) was the same day Gary Server filed his Finley letter (no-merit) erroneously holding that the record in my case contained no meritorious claims for relief (Exhibit M). On September 29, 2016 PCRA Judge Barbara McDermott issued a summary dismissal under Pa. Rules of Criminal Procedure 907. On October 18, 2016 I filed a 907 objection challenging Gary Server's erroneous holding in his Finley letter, especially in relation to former sitting Judge Renee Hughes judicial misconduct (see grounds six and thirteen), jury misconduct/ex parte contact

---

**[FN7]** Pa. Rules of Criminal Procedure 904(F)(1) actually requires the court to inform PCRA petitioner of the appointment, but the practice of the court is to leave it up to the appointed counsel to make contact with the petitioner, informing him/her of the appointment.

and prosecutorial misconduct (see grounds seven eight). Judge McDermott then ordered Gary Server to file another Finley letter in response to my 907 objection (Exhibit N). I then filed a request to file an supplemental *907 objection in response to Gary Server's second Finley letter(Exhibit N). Judge McDermott never formally issued an order that I'm aware of granting my request, however, I never got a chance to file the supplemental objections because I was placed in the RHU on January 15, 2017 here at the prison and denied access to my legal property for a month. My objections were sitting in my legal property. It was during this time on January 20, 2017 that Judge McDermott issued an opinion denying me relief, erroneously concurring with Gary Server's no-merit letter (Exhibit O). I then filed an appeal to the Pa Superior court challenging both the PCRA court and counsel's denial of my petition based the holding that the record in my case contained no meritorious issues.

The Pa Superior Court denied my appeal on the erroneous basis that I failed to file a timely 907 objection, therefore I waived all my claims for relief. The court wrote that I didn't file my 907 objection until December 27, 2016 (Exhibit P). The Superior Court's opinion was factually wrong because the December 27th document they referred to was my request to file a supplemental 907 objection, it was not a 907 objection itself. My original 907 objection was filed on October 18, 2016, and Judge McDermott even refers to this document in her opinion denying my petition (see, Exhibit O). I could not challenge the Pa superior Court's ruling on a reargument motion or appeal the decision to the Pa Supreme Court, because the Pa Superior Court issued an unpublished opinion on October 17, 2017, however, the court never informed me of the decision. I didn't find out about the decision or see the opinion until December thirteenth (Exhibit Q) well past the to file for argument or appeal to the Pa Supreme Court. Even when I received a copy of the certificate of remittal there was no opinion included, which is significant because the Pa. Rules of Appellant Procedure 2571(a) requires the remanded record to include the opinion of the court. After I realized that I was procedurally barred from continuing my collateral appeal, I began to prep for this habeas corpus.

I just want to offer this court something to think about in relation to the Superior Court not informing me of its decision in my case, because presumably the state will argue procedural default on some of my claims. I litigated my collateral appeal pro se and I did it as a pauper. I have no access to judicial resources. I have no way of anticipating when the court will make a decision, and unpublished court opinions are not readily available to prisoners, especially indigent ones.

Had the immediately informed of their decision I would've first filed for reagument to correct the court's erroneous finding of procedural fact. If that didn't work, I would've appealed to the Supreme Court.

---

*Under Pennsylvania's post-conviction law whenever an attorney files a Finley letter holding a PCRA petitioner's petition as having no-merit the Judge issues a summary dismissal under Pa Rules of Criminal Procedure 907(1). At that point the petitioner has 20 days to respond to the summary dismissal with objections, which basically puts the petitioner in a situation to have to argue the merit of the claims pro se. If, petitioner fails to file the 907 objection then he defaults all his claims for relief, because the Pennsylvania Courts basically use 907 objections as a vehicle of issue preservation, Com v. Rykard 55 A.3d 117 (Pa. Supreme Ct. 2012).

## **TIMELINESS OF HABEAS PETITION**

A Habeas petitioner must file his petition within one year of the state judgment becoming final, 28 U.S.C § 2244(d)(1)(A). A petitioner is afforded statutory tolling when state collateral petition (PCRA) is filed in accordance with the applicable state law, 28 U.S.C. 2244(d)(2). Also, under Jiminez v. Quarterman 555 U.S. 113 (2009)(Where a state court grants a criminal defendant the right to file an out of time appeal during state collateral review , his judgment is not yet final for purposes of seeking federal habeas review).

Trial counsel Daniel Rendine ("Rendine") who was also appellant counsel acting ineffectively abandoned me on direct appeal. Rendine filed a deficient brief to the Superior Court, which the court affirmed the judgment of the lower court on July 22, 2009. Rendine never filed a Petition for Allowance of Appeal to the PA Supreme Ct.. Therefore, my conviction would've became final under §2244 on August 21, 2009. However, after I finally figured out what I could do to get my appeal to the PA supreme Ct. I filed a pro se PCRA on July 2, 2010 seeking restoration of my direct appeal rights. My PCRA was granted January 24, 2012 and I was given permission (actually appointed attorney) to file a nunc pro tunc appeal to the PA Supreme Ct.. On Oct 5, 2012 the nunc pro tunc appeal was denied by the Supreme Court, and I did not seek certiorari in the U.S. Supreme Court. The state judgment became final at the expiration of the 90 days for seeking certiorari, Ott v. Johnson 192 F.3d 510, 513 (5th cir 1999)(period for filing for certiorari with the U.S. Supreme Ct. is considered in the finality determination under 2244(d)(1)(A), U.S. S. Ct. Rule 13(1)). Counting 90 days from Oct 5, 2012 the judgment became final on January 3, 2013. The U.S. Supreme Court in its Jiminez ruling allows for the finality of my nunc pro tunc appeal to counted as to when my the judgment became final in my case.

The state judgment became final on January 3, 2013 that means I had until January 3, 2014 to file my habeas. However, §2244(d)(2) affords me statutory tolling as to my timely and properly filed PCRA under 42 Pa.C.S. §9541-9546. I filed my PCRA on September 20, 2013, the clock on my one year stopped. And I would get 3 months and 14 days of tolled time. The Judgment as to my PCRA became final on November 17, 2017. I appealed the denial of my PCRA based on counsel's Finley letter. The Superior Court made a decision on my case October 17, 2017 without informing me of their decision and the opinion was unpublished. I didn't find out about the court's decision until December 13, 2017. In an exercise of diligence I was able to get the opinion/decision, but this still wasn't until December. The Superior Court violated its own rule under Pennsylvania Rules of Appellant Procedure 2571 because in the remanded recorded inventory list there was no opinion/decision/judgment. So, if this

court goes by the day when my 30 days for filing for review to the Supreme Court my PCRA judgment became final Nov. 17, 2017 and I would have until February 28, 2018 to file a timely habeas petition. Due to the brake down in court process by the Superior Court in keeping me ignorant of their decision I think that December 13, 2017 should be the day my PCRA judgment became final which would give until March 25, 2018 to file a timely habeas petition.

## MARTINEZ V. RYAN STATEMENT OF GROUNDS

On September 20, 2013 I filed pro se a PCRA pre-printed form that the Dept. of Corrections provides to inmates. Attached I included motions for original discovery/transcripts/Brady & Giglio discovery material. This filing began my state collateral proceedings. In April of 2014, six months after filing the forms the court appointed Dennis Turner to represent me on PCRA. Dennis Turner did not inform me of his appointment until August of 2015 when he wrote me, and that would be the first and only time he would have any contact with me . In June of 2016 I filed a pro se motion for appointment of new counsel. PCRA Judge Barbara McDermott based on my motion and Dennis Turner's refusal to show up for scheduled PCRA status hearings removed him from my case. On July 5, 2016 immediately after removing Turner the Judge appointed Gary Server to my case. On September 8, 2016 Gary server filed a Finley letter claiming that he had reviewed the record in my case  and it contained absolutely no meritorious claims for relief. During the three yaers the PCRA process was going on neither Dennis Turner nor Gary Server didn't raised or present any claims to the courts in my initial PCRA. It was almost as if the state collateral proceedings didn't exist.

The following grounds for relief are grounds that a competent attorney would've raised and presented to the courts as meritorious. All the grounds are substantial  and at least one, Reasonable doubt jury instruction has been ruled on by this court in Brooks v. Gilmore 2017 WL 3475475 (E.D. Pa., Aug. 11, 2017) and relief was granted.

1

## **GROUND ONE**

PCRA COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE TRIAL COURT'S REASONABLE DOUBT INSTRUCTION WHICH UNCONSTITUTIONAL ELEVATED THE LEVEL OF DOUBT NECESSARY TO ACQUIT.

---

SUPPORTING FACTS:

On the seventh day of my homicide trial former Philadelphia Common Pleas Judge Renee Hughes (herein after "Judge Hughes") began delivering her instruction s to the jury (N.T. 9.18.07 pg. 132). During Judge Hughes instruction as to reasonable doubt, she went outside the standard jury instruction and gave the jury the following instruction:

> Ladies and gentleman, it's helpful sometimes to think about reasonable doubt in this way. Now, because I've had the great pleasure of speaking to each one of you, I know that each one of you has someone in your life that you love, someone who is absolutely precious to you. What if you were told by that love one that they had a life threatening medical condition and the only protocol for that medical condition was an experimental surgery?
> Now, very likely you're going to seek a second opinion. You might seek a third opinion. You probably are going to do all the research you can humanly do to find out well, what is this condition? How did it come about? What's this new surgical protocol? What's the success rate on the protocol? How does it work? You're going to do everything you can do. You probably are going to call everybody you know who has anything to do with medicine and say, what do you know? what have you heard? what should I do? Who's the best? Should I do this? Shouldn't I do that? But at some point, the question will be called and you will have to make a decision whether you will allow that loved , one, that precious one, to go forward with the surgery. If you do, it's not because you have moved beyond all doubt. There are no guarantees. If you go forward, it is because you have moved beyond reasonable doubt.

> (N.T. 9.18.07 pgs. 143-44)

Judge Hughes made the hypothetical instruction the main portion and majority of the instruction. Trial counsel Daniel Rendine failed to make a contemporaneous objection, and also failed to raise objections to the instruction before or after the instructions were delivered, (N.T. 9.18.07 pgs. 143-44).

2

## *GROUNDS TWO, THREE, FOUR

PCRA COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO, ON GROUNDS THAT I WAS DEPRIVED OF A PRESUMPTION OF INNOCENCE AND DUE PROCESS, JUDGE HUGHES MAKING ME SIGN THE BILLS OF INFORMATION IN THE PRESENCE OF THE JURY AS BEING RELEVANT TO MY GUILTY/NOT GUILTY PLEA, ESPECIALLY WHEN THE JUDGE ALLOWED THE JURY TO DRAW INFERENCE(S) FROM ME SIGNING THE BILLS IN THEIR PRESENCE.

PCRA COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR MOVING THE SIGNED BILLS OF INFORMATION INTO EVIDENCE AFTER I HAD SIGNED IT, WHEN IT WAS ILLEGALLY CREATED EVIDENCE, WAS DAMAGING TO MY PRESUMPTION OF INNOCENCE AND FURTHER ALLOWED THE JURY TO DRAWN AN ADVERSE INFERENCE DUE TO IT BEING EVIDENCE CREATED IN THEIR PRESENCE.

PCRA COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO MOTION FOR MISTRIAL ON GROUNDS THAT JUDGE HUGHES COMMITTED JUDICIAL MISCONDUCT BY SHOWING PERSONAL INTEREST IN THE OUTCOME OF THE TRIAL AND ATTACKED COUNSEL'S DEFENSE, WHEN SHE ON HER OWN PRACTICE/CUSTOM, AGAINST LAW AND RULES, MADE ME SIGN THE BILLS OF INFORMATION IN THE PRESENCE OF THE JURY AND ALLOWED THE JURY TO DRAW INFERENCES FROM THE SIGNING.

### SUPPORTING FACTS:

Immediately before my retrial began and after picking the jury, I was arraigned in the presence of the jury by which I plead not guilty to all charges (N.T. 9.12.07 pgs. 26-28). As soon as I had plead not guilty, Judge Hughes courtroom assistant Robert O'Neill came to the defense table and produced the bills of information with a big red stamp on it and instructed me that I had to sign it. I was about to sign it, but I stopped midstride because I was confused as to why I was signing anything because I had just went to trial one time already and didn't have to sign anything, especially in the presence of the jury. Robert O'Neill told me that I was signing it just to say I plead not guilty. I didn't want to sign it, but because I didn't want to contradict my plea in the presence of the jury I signed it. Defense

*The incident at trial involving Judge Hughes making me sign the bills of information raises multiple claims for relief. Only one claim was addressed on direct appeal and that was based on the closing arguments comments of the prosecution concerning the signing. No issues were raised concerning the constitutionality of the actual incident itself and Judge Hughes actions in creating this incident.

3

Counsel Rendine never afforded me legal consultation as to signing the bills or never forewarned me that I would have to sign the bills, and never objected to the incident at the time it happened. Although, later on he would tell Judge Hughes that in thirty five years of practice he'd never seen a defendant be made to sign his name on [bills of information] when being arraigned (N.T. 9.18.07 pg.117). It was at the behest Judge Hughes that I was made to sign the bills of information (N.T. 9.18.07 pgs. 118-119).

Later into trial during closing arguments the prosecutor used my hesitation to sign the bills of information against me (N.T. 9.18.07 pg.94). Trial counsel did object**[FN1]** to the comments and moved for a mistrial (N.T. 9.18.07 pgs.117-120). Judge Hughes denied the mistrial on grounds that counsel placed the signed bills of information into evidence, the bills of information have been signed by defendants in her courtroom for twelves and a half years and because signing the bills is an unequivocal attestation as to whether the defendant is pleading not guilty or guilty (N.T. 9.18.07 pgs. 118-119). The whole verbal exchange between me and Robert O'Neill, and the Judge's comments made during this incident is missing from the transcript. It should've been located at <u>N.T. 9.12.07 pgs.26-28</u>. The only evidence that this incident happened is by reference to other parts of the record (N.T. 9.13.07 pg.8/N.T. 9.18.07 pg.94). And the actual signed bills of information are mysteriously missing from the evidentiary record.

---

**[FN1]** Judge Hughes violated long established law as to objections when she wouldn't allow my attorney to make any contemporaneous objections during closings (N.T. 9.17.07 pgs.166-167). That's why on the record all Rendine's objections are made in succession at the end of closings (N.T. 9.18.07 pgs.117-124).

## **GROUND FIVE**

PCRA COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE CLAIM THAT TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY INTERFERING WITH MY RIGHT TO TESTIFY AT THE SUPPRESSION HEARING, WHEN COUNSEL REFUSED TO ALLOW ME TO TESTIFY OR CALL ME AS A WITNESS AFTER I HAD EXPRESSED A DESIRE TO EXERCISE MY RIGHT, DUE TO THE CRITICAL EVIDENTIARY VALUE OF MY TESTIMONY IN ESTABLISHING CRITICAL FACTS AS TO THE QUESTION OF VOLUNTARINESS AND TO PRESENT EVIDENCE OF POLICE MISCONDUCT IN USING SUBTERFUGE, WHILE I WAS DRUGGED UP, TO OBTAIN MY SIGNATURE ON A MIRANDA WAIVER FORM.

SUPPORTING FACTS:

On February 12, 2007 I appeared before Judge Hughes with counsel for a suppress hearing. Prior to the hearing I informed counsel that I wanted to testify because I was drugged up on morphine and benadryl (intravenous diphenhydramine) and the cops using subterfuge told me I had to sign some papers saying that they spoke to me and it wasn't until later I discovered it was a Miranda waiver form. Rendine agreed to me testifying and informed the Judge that I would be testifying (N.T. 2.12.07 pg.4). During introduction of defense evidence Rendine called toxicologist Lawrence Guzzardi to testify, but not me (N.T. 2.12.07 pg. 89). During testimony as related to the issue of voluntariness, it could not be determined by the hospital records whether or not I had actually self-administered the morphine on 9.6.07- the day of the interrogation – before it was discontinued at 5:22pm (N.T. 2.12.07 pgs.110, 115). The interrogating detective and his cop buddies testified that I had a conversation with him (N.T. 2.12.07 pg.53), that I had read the Miranda waiver form before I signed it and testified that I said I understood them, and that I was alert during the interrogation and didn't appear to be under the influence of drugs (N.T. 2.12.07 pgs. 13,52,59). At the end of the hearing, due to counsel's refusal to let me testify I interjected and attempted to inform the Judge that I was sedated from medications, the police woke me up, I didn't have a conversation with the detective and that the cops were being dishonest (N.T. 2.12.07 pgs. 126-128). Prior to trial I had submitted a pro se affidavit of truth detailing the fact that I was out of it (significantly cognitively impaired) during the interrogation and that the detectives used subterfuge to get me to sign the waiver form (N.T. 9.10.07 pgs. 6,7,10)[FN2] This was all information I shared with counsel prior to suppression hearing and the first trial.

[FN2] The actual original document, the affidavit of truth, was seized during the warrantless search & seizure that the prosecution conducted on the jail cell I was housed in, that's why the prosecution has it in her possession. This document has since then disappeared

5

## GROUND SIX

PCRA COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT AND/OR MOTION FOR A MISTRIAL ON GROUNDS OF MISCONDUCT/JUDICIAL PREJUDICE AND BIASNESS, WHEN JUDGE RENEE HUGHES A FEW TIMES DURING THE TRIAL MADE DISPARAGING AND PREJUDICIAL COMMENTS AND THEN ORDERED THE STENOGRAPHER TO REMOVE THE COMMENTS FROM THE RECORD IN ORDER TO UNDERMINE MY APPEAL RIGHTS AND CONCEAL HER BEHAVIOR FROM THE APPELLANT COURTS AND COMMITTED OTHER ACTS OF JUDUCIAL MISCONDUCT.

---

SUPPORTING FACTS:

In February 12, 2007 I appeared before former sitting Judge Renee Hughes ("Judge Hughes") for a suppression hearing (N.T.2.12.07). Immediately preceding the start of the hearing Judge Hughes made a comment that gave me the impression that she had prejudged the case and was biased when she made the comment "the defendant needed to take the deal because he's not going to win this case in my courtroom". Defense counsel Rendine totally ignored this comment and attempted to persuade me to take the Commonwealth's offer of 15-30 years, a deal I ultimately denied (N.T. 2.12.07 pg.127). Initially any issues I had with Judge Hughes comments were made moot when the case was transferred to the Honorable Judge Sheila Woods-Skipper for adjudication for a reason unrelated to Judge Hughes comments. (N.T. 9.10.07 pg.37). My first trial resulted in a hung jury and sometime shortly thereafter while I was awaiting retrial Rendine upon my request provided me a copy of the transcripts of the suppression hearing and trial. It was then that I realized that either Judge Hughes comment had been deleted, deliberately left out of was off the record.

When I was brought to the Criminal Justice Center for retrial in September of 2007, I was made aware for the first time that the case had been transferred back to Judge Hughes for adjudication. Based upon my recollection of Judge Hughes prejudicial comments at the suppression hearing, I immediately took issue with her presiding over my trial. During consultation with Rendine I conveyed my concerns about Judge Hughes presiding over my trial and reminded Rendine of Judge Hughes prejudicial comments and requested he motion the court for recusal. Rendine initially refused to motion the court for recusal telling me that it would anger the Judge. However, after some reluctance Rendine did eventually motion the court for recusal, but failed to articulate precisely thye reason for recusal, (N.T. 9.10.07), which was Judge Hughes comments. Rendine

6

only alluded to the reason when he stated: "based upon what happened at the motion to suppress" id. He further went on to say "your Honor is prejudiced against him, and he does not believe that he can receive a fair trial in this courtroom" id. These statements by counsel were based on what I had conveyed to Rendine concerning Judge Hughes prejudicial comments at the suppression hearing.

On the fourth day of trial after Rendine had motioned the Judge to recuse herself and it was denied with her stating that she "has no prejudice or bias against me" (N.T. 9.10.07 pg.38), Judge Hughes ordered Official Court Reporter Carl Sokolski ("Sokolski") to unlawfully alter the transcripts of the proceedings (N.T. 9.13.07 pg.15). This was done after Judge Hughes became hostile towards my attorney Rendine because he was making a legitimate legal argument as to the introduction into evidence of prior crimes evidence that had been ruled inadmissible on a motion in limine by Judge Woods-Skipper in my first trial. In a hostile tone with her voiced raised, Judge Hughes basically called my attorney's legal argument "bull"[shit] (N.T. 9.13.07 pg.14). With a full on display of hostility she also just stop short of telling counsel that he was getting her angry id. Judge Hughes sought to conceal her behavior from the appellant courts when she ordered Sokolski to take the "bull" out of the record, because she was "already in enough trouble with the appellant courts" (N.T. 9.13.07 pg.15). Rendine never objected to Judge Hughes misconduct, moved for a mistrial, reported it the president judge, raised her misconduct as an issue on post-trial motion or on direct appeal.

Judge Hughes even more egregiously and hostile on the sixth day of trial again ordered Sokolski to unlawfully alter the transcripts to conceal her judicial misconduct (N.T. 9.17.07 pg.167). This was done in the course of Judge Hughes committing even more misconduct when against the rules and law she told my attorney that he was not allowed to make contemporaneous objections during closing arguments (N.T. 9.17.07 pgs.166-167). And prejudicially personalized her reasoning when she said that she thought it to be "horrifically rude" and unnecessary to make objections during closing arguments id.. Judge Hughes went so as to threaten to "kill" my attorney and specifically instructed Sokolski to delete her comments from the record (N.T. 9.17.07 pg.167). Again Rendine never objected, moved for a mistrial. reported it, raised in post-trial motions or direct appeal.

Judge Hughes even more egregiously in furtherance of her judicial misconduct twice called me a "flipping psychopath and a "sick human being" and as to these comments flaunted her biasness

7

and manipulations of the transcript, when after making the comments she told Sokolski "you don't got take flipping out (N.T. 9.17.07 pgs.69-70). Subsequent to my case ending in the trial court, Judge Hughes continued to commit the same exact judicial misconduct in my case in other cases. In February of 2008 in the matter of Com v. Dougherty 18 A.3d 1095 (Pa.Supreme 2011) (Exhibit A) she was exposed. Judge Hughes misconduct in that case garnered considerable media attention (Exhibit B.). After I discovered the media attention Judge Hughes misconduct had received and the professional and public backlash, I contacted Official Court reporter Carl Sokolski and addressed the issue of Judge Hughes misconduct, the media attention and his involvement (Exhibit C.). Sokolski responded to my contact by dishonestly denying that Judge Hughes had directed him to unlawfully alter the transcripts in my case. He wrote that Judge Hughes never directed him to "delete, add or change anything in any transcript, (Exhibits D.). The record itself contradicts this assertion by Sokolski.

8

## GROUND SEVEN, EIGHTH

PCRA COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR NOT OBJECTING/MOTIONING FOR MISTRIAL ON GROUNDS OF PROSECUTORIAL MISCONDUCT, TO THE PROSECUTOR'S WARRANTLESS SEARCH & SEIZURE OF MY LEGAL MATERIAL FROM THE JAIL CELL I WAS HOUSED IN WHEN IT WAS CONDUCTED ON FALSE PRETENSES, AND USED TO TRY TO BOLSTER ITS CASE AND EVIDENCE USED FROM THE SEARCH & SEZURE AMBUSHED ME AT TRIAL.

PCRA COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR NOT SEEKING SUPPRESSION OF THE MATERIAL THAT WAS SEIZED DURING THE JAIL CELL SEARCH & SEIZURE AND ULTIMATELY USED AS EVIDENCE AGINST ME.

SUPPORTING FACTS:

During the weekend trial recess on September 15, 2007 I was being housed on G1 unit at the Phila. Industrial Corrections Center, when with the cooperation of Correctional Officers, Phila Police Detectives and prosecution witnesses Verrechio and Mostovyk on behalf of the prosecutor, Assistant District Attorney Jacquelyn Coelho, came into the jail and conducted a warrantless search & seizure of my personal and legal property (9.19.07 pg.25). The search & seizure was allegedly authorized by a court order (Exhibit E.). However, Judge Hughes never recognizes on record that she gave a court order for the search & seizure (N.T. 9.19.07 pgs.20-30). The search and seizure was iniated on the false pretense that I possessed a cellphone in the jail, when ADA Coelho was dishonest and knowingly gave false information to Judge Hughes falsely claiming that I had been caught with a cellphone (9.17.07 pg.71) see also (N.T. 9.18.07 pgs. 193-194). During the trial when I requested that my legal material be returned to me, Judge Hughes told me that my legal material wouldn't be returned because I had a cellphone in the jail (N.T. 9.18. 07 pgs.193-194). I denied the false accusation id.. It is then that ADA Coelho revealed to Judge Hughes that I didn't have a cellphone in the jail id.. Among the legal material seized and never returned was transcripts from my first trial, suppression hearing transcript, hospital records, whole entire pre-trial discovery, preliminary hearing transcript, defense trial notes and exhibits and most of all defense evidence in the form of a letter written by Commonwealth witness Athena Ford**[FN3]**

9

(Exhibit F.). Judge Hughes instructed ADA Coelho to return the seized material (N.T. 9.19.07 pgs.24-25). However, it was never returned to me and in July 2009 I filed a civil action in to get my legal material returned to me. (Exhibit G). Defense counsel Rendine voluntarily said he would provide me with transcripts and discovery but he never did. (N.T. 9.19.07 pg.26).

At trial the prosecution used as evidence against me, a manuscript of an urban novel found among the seized material (N.T. 9.18.07 pgs. 85-86). This evidence was only handed over to the defense on monday morning after the weekend trial recess.  Trial counsel objected to reference of  the material during closing, but failed to objected to the search itself or the evidence it produced on fourth amendment and prosecutorial misconduct grounds or that the defense was being ambushed (N.T. 9.18.07 pg.115).

---

[FN3] This letter was evidence to be used to prove I had nothing to do with Athena Ford being pistol whipped prior to her preliminary hearing testimony. The pistol whipping was used as evidence against me by the prosecution, when the defense attacked the witness credibility based her three inconsistent police statements. This letter would also prove that the witness was perjuring herself and/or being coached/coerced by the prosecution to testify about the pistol whipping.

## DIRECT APPEAL ISSUES

The following grounds for relief were claims that appeal counsel raised on direct appeal and were addressed by the Superior Court of Pennsylvania in an unpublished opinion. These were claims that were brought to the PA Supreme Court on a petition for allowance of appeal which the Court denied Oct 5, 2012. I find that these grounds have been properly exhausted because they've made one round of review in the state appellant courts.

11

## GROUND NINE

THE TRIAL COURT COMMITTED A LEGAL ERROR WHEN IT MISSTATED THE LAW WHEN ANSWERING A JURY QUESTION REGARDING THE DIFFERENCE BETWEEN FIRST DEGREE AND THIRD DEGREE MURDER, WHEN THE TRIAL JUDGE OFFERED AN EXAMPLE THAT THIRD DEGREE MURDER IS WHEN A DEFENDANT STRIKES A VICTIM IN THE FACE ONE TIME AND UNINTENTIONALLY CAUSES THE DEATH OF THE VICTIM.

SUPPORTING FACTS:

At my trial the Judge read the definitions of both first and third degree murder to the jury before they retired to deliberate (N.T. 9.18.07 pgs.167-170). The jury later on during its deliberations sent a question out to the Trial Judge. The question was "we the jurors would like to hear the difference between first and third degree murder" (N.T. 9.18.07 pg.199). The Trial Judge read the definitions over again but also went to further define third degree (N.T. 9.18.07 pgs.200-202). The Trial Judge used what she held as a "classic example" of third degree when she told the jury that, when two people get into a fight and one punches the other and the one who got punched falls and accidently hits his head on the ground and dies that's third degree murder N.T. 9.18.07 pg.203). Trial Counsel Rendine objected to the definition and motioned for a mistrial (N.T. 9.18.07 pg.209). The Trial Court in response to counsel's objection offered to redefine third degree,. However, counsel took the position that further definition may further confuse the jury and he didn't know how to cure the defective jury instruction/definition (N.T. 9.18.07 pgs.205-210).

12

## GROUND TEN

TRIAL COURT COMMITTED LEGAL ERROR IN DENYING THE DEFENSE MOTION FOR A MISTRIAL REGARDING THE PROSECUTIORS COMMENTS DURING CLOSING ARGUMENT THAT I (DEFENDANT) HESITATED WHEN I WAS COMPELLD BY THE TRIAL JUDGE TO SIGN THE BILLS OF INFORMATION AS RELEVANT TO MY ARRAIGMENT PLEA.

---

SUPPORTING FACTS:

For purposes of expediting the litigation of my claims and the fact that the incident involving the signing of the bills of information in the presence of the jury gives rise to multiple grounds for relief, I'll incorporate the supporting facts from grounds two, three and four into this ground for relief (see supporting facts on pages 3-4 herein).

13

THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DEFENSE MOTION FOR
MISTRIAL WHEN THE TRIAL COURT PERMITTED THE PROSECUTION TO
INTRODUCE THE HIGHLY PREJUDICIAL EVIDENCE OF ATHENA FORD BEING
PISTOL WHIPPED PRIOR TO THE PRELIMINARY HEARING.

SUPPORTING FACTS:

On November 30, 2005 I appeared in court for a preliminary hearing. During the course of the
hearing it was revealed that prior to the hearing prosecution witness Athena Ford had been pistol
whipped[FN4] (N.T. 9.12.07 pg.225). Based upon recollection Judge Wood-Skipper in my first
trial granted a defense motion in limine excluding the evidence of the pistol whipping of the
witness.[FN5] In the retrial with Judge Hughes presiding, the prosecution reopened the issue and
the trial court basically ruled that it would allow the prosecution to present the evidence of the
pistol whipping, if defense counsel opened the door with his line of questioning during cross
examination (N.T. 9.12.07 pgs.225-226). During cross examination defense counsel asked the
witness questions concerning how she had come in contact with police (N.T. 9.12.07 pgs.84-85).
Somehow, in accordance with the trial court's ruling, the prosecution felt counsel opened the door
to presentation of the pistol whipping evidence with his line of questioning, and presented the
evidence to the jury on redirect examination (N.T. 9.13.07 pgs.80-83, 91-94). Defense counsel
objected/motioned for mistrial to the presentation of the evidence on grounds that it was irrelevant
and highly prejudicial, but never objected on grounds that the court's ruling violated the coordinate
jurisdiction rule under the law of the case doctrine N.T. 9.13.07 pgs.84-85). The trial court gave
the jury a cautionary instruction on the evidence of the pistol whipping (N.T. 9.18.07 pgs.9-12.)
On September 15, 2007 at the behest of Assistant District Attorney Jacquelyn Coelho, detectives
and prosecution witnesses Verrechio and Mostovyk seized all my legal material from the jail cell

[FN4] I have not had the preliminary hearing notes of testimony in my possession since September
15, 2007, that is the day prosecution witnesses Detectives Verrechio and Mostovyk at the behest
of Assistant District Attorney Jacquelyn Coelho conducted an illegal search and seizure of all my
legal material, when they came into the jail and with correctional officers seized it from the jail
cell I was housed in . The preliminary hearing notes were among the legal documents seized the
prosecution and police (please refer to grounds seven and eight on pages 9-10 herein).

14

I was housed in at Philadelphia Industrial Correctional Center on state road (N.T. 9.19.07 pgs.___).
Among the legal documents seized was a letter written by prosecution witness Athena Ford , which
would've proved that her pistol whipping had absolutely nothing to do with her cooperation in the
court case against me (Exhibit H).**[FN5]** ‣

---

**[FN5]** My transcripts from my first trial and the defense evidence in the form of Athena ford letter
were both seized by police & prosecution and never returned, I addressed this issue in the lawsuit
I filed seeking return of my legal property (Exhibit H) (N.T. 9.19.07 pgs._____). The fact that the
prosecution has seized my transcripts from my first trial has interfered with my ability to factually
develop my law of the case doctrine issue as to the pistol whipping evidence, because I need to
analyze the exact details of Judge Wood-Skipper's ruling on the motion in limine in the first trial.

## GROUND TWELVE

DIRECT APPEAL COUNSEL RENDERED INEFFECTIVENESS WHEN COUNSEL FAILED TO BRIEF/ARGUE THE ISSUE THAT THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED DEFENSE MOTION TO DISQUALIFY A BIASED JUROR(S) THAT WAS BASED ON JURY MISCONDUCT/EX PARTE CONTACT BETWEEN TWO JURORS AND A PROSECUTION WITNESS DURING A COURT RECESS.

SUPPORTING FACTS:

The trial court called for a luncheon recess and dismissed both the jury and both parties and their witnesses (N.T. 9.18.07 pg.122). During the luncheon recess two jurors **[FN6]** approached prosecution witness Det. Verrechio while they were walking on Juniper Street (N.T. 9.18.07 pg.124). One of the jurors iniated a conversation with Det. Verrechio stating "you must be the detective" and told Det. Verrechio he "must be a busy" and that she saw him "on T.V. the other night" (N.T. 9.18.07 pg.125). Det. Verrechio informed the juror they weren't supposed to be conversing, and the juror recognized that they weren't supposed to be having any contact by responding "I know" (N.T. 9.18.07 pg.125). Presumably Det. Verrechio told the juror that they weren't supposed to be conversing because of the trial court's sequestration order (N.T. 9.18.07 pg.126). Subsequently, the ex parte contact/jury misconduct was reported to the trial court by Det. Verrechio immediately preceding charging the jury N.T. 9.18.07 pg.122). Defense counsel in response to the ex parte contact/jury misconduct motioned the court to have the one identified juror removed and replaced by an alternate (N.T. 9.18.07 pg.122). The trial judge without investigating the jurors involved denied the motion based on her assumption the the juror(s) was just being "decent" and didn't talk about the case or attempt to elicit information about the case. The Trial Judge further held that the juror "is no way impaired as a juror" (N.T. 9.18.07 pg.130). Defense counsel who was also appellant counsel raised the issue of the ex parte contact/jury misconduct in his statement of matters complained of on appeal (Exhibit I), as the issue was properly preserved in the trial court. However, counsel never briefed or argued the issue to the appellant court.

**[FN6]** Det. Verrechio in his testimony said that there may have been two jurors involved in the ex parte contact/juror misconduct incident (N.T. 9.18.07 pg.124). However, the trial judge or defense counsel never investigated to find out who the second juror was that had an involvement in this incident. Nowhere on this record is the second juror identified.

16

## **GROUND THIRTEEN**

PCRA COUNSEL RENDERED INEFFECTIVE ASSISTANCE FOR FAILING TO RAISE THE CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR NOT OBJECTING AND/OR MOTIONING THE COURT ON A POST TRIAL MOTION, AS TO JUDGE RENEE HUGHES JUDICIAL MISCONDUCT ON THE GROUNDS THAT JUDGE RENEE HUGHES COMMITTED BAD FAITH JUDICIAL MISCONDUCT THAT DENIED ME A FAIR TRIAL AND DUE PROCESS WHEN SHE SOUGHT TO UNLAWFULLY ALTER THE TRANSCRIPT OF THE PROCEEDINGS AT TRIAL IN ORDER TO CONCEAL HER PREJUDICIAL AND BIAS COMMENTS FROM THE APPELLANT COURT AND UNDERMINE MY DIRECT APPEAL.

---

SUPPORTING FACTS:

For purposes of expediting the litigation of my claims and the fact that the incident involving former sitting Judge Renee Hughes judicial misconduct gives rise to multiple grounds for relief, I'll incorporate into this ground for relief the supporting facts from ground six on pages 6-8.

17

## **TIMELINESS OF HABEAS PETITION**

A Habeas petitioner must file his petition within one year of the state judgment becoming final, 28 U.S.C § 2244(d)(1)(A). A petitioner is afforded statutory tolling when state collateral petition (PCRA) is filed in accordance with the applicable state law, 28 U.S.C. 2244(d)(2). Also, under Jiminez v. Quarterman 555 U.S. 113 (2009)(Where a state court grants a criminal defendant the right to file an out of time appeal during state collateral review, his judgment is not yet final for purposes of seeking federal habeas review).

Trial counsel Daniel Rendine ("Rendine") who was also appellant counsel acting ineffectively abandoned me on direct appeal. Rendine filed a deficient brief to the Superior Court, which the court affirmed the judgment of the lower court on July 22, 2009. Rendine never filed a Petition for Allowance of Appeal to the PA Supreme Ct.. Therefore, my conviction would've became final under §2244 on August 21, 2009. However, after I finally figured out what I could do to get my appeal to the PA supreme Ct. I filed a pro se PCRA on July 2, 2010 seeking restoration of my direct appeal rights. My PCRA was granted January 24, 2012 and I was given permission (actually appointed attorney) to file a nunc pro tunc appeal to the PA Supreme Ct.. On Oct 5, 2012 the nunc pro tunc appeal was denied by the Supreme Court, and I did not seek certiorari in the U.S. Supreme Court. The state judgment became final at the expiration of the 90 days for seeking certiorari, Ott v. Johnson 192 F.3d 510, 513 (5th cir 1999)(period for filing for certiorari with the U.S. Supreme Ct. is considered in the finality determination under 2244(d)(1)(A), U.S. S. Ct. Rule 13(1)). Counting 90 days from Oct 5, 2012 the judgment became final on January 3, 2013. The U.S. Supreme Court in its Jiminez ruling allows for the finality of my nunc pro tunc appeal to counted as to when my the judgment became final in my case.

The state judgment became final on January 3, 2013 that means I had until January 3, 2014 to file my habeas. However, §2244(d)(2) affords me statutory tolling as to my timely and properly filed PCRA under 42 Pa.C.S. §9541-9546. I filed my PCRA on September 20, 2013, the clock on my one year stopped. And I would get 3 months and 14 days of tolled time. The Judgment as to my PCRA became final on November 17, 2017. I appealed the denial of my PCRA based on counsel's Finley letter. The Superior Court made a decision on my case October 17, 2017 without informing me of their decision and the opinion was unpublished. I didn't find out about the court's decision until December 13, 2017. In an exercise of diligence I was able to get the opinion/decision, but this still wasn't until December. The Superior Court violated its own rule under Pennsylvania Rules of Appellant Procedure 2571 because in the remanded recorded inventory list there was no opinion/decision/judgment. So, if this

18

court goes by the day when my 30 days for filing for review to the Supreme Court my PCRA judgment became final Nov. 17, 2017 and I would have until February 28, 2018 to file a timely habeas petition. Due to the brake down in court process by the Superior Court in keeping me ignorant of their decision I think that December 13, 2017 should be the day my PCRA judgment became final which would give until March 25, 2018 to file a timely habeas petition.

19

Naseer Shakur, A/K/A DANIEL LEWIS          :          No._____

                     Petitioner          :

        v.          :

Cynthia Link, Supt. SCI-Graterford          :          HABEAS CORPUS PETITION

                     Respondent          :

## DECLARATION OF TRUTH

I, Naseer Shakur, pro se petitioner herein declare under the penalty of perjury that all the statements of fact made in this Habeas grounds for Relief are true and correct to the best of my knowledge and are not designed to defraud the court, but are based on what actually transpired during the state proceedings in this matter.

                                 Naseer Shakur, Pro se

Date: 2.26.18

20

Addressed To:                         Sent From:                                          H

Office of the Clerk                   Naseer Shakur (LEWIS)                       ╪

U.S. District Court                   HF3762/SCI-Graterford

601 Market Street                     Box 244

Phila, PA 19106                       Graterford, PA 19426

February 26, 2018

RE: <u>HABEAS CORPUS PETITION, NASEER SHAKUR V. CYNTHIA LINK, SUPT. SCI-GRATERFORD</u>

Dear, Clerk

   Enclosed please find my petition under §2254 being filed pro se. Also, I'm invoking the prison mailbox rule as to the mailing of my petition. Enclosed is the original cash slip as proof of placement into the institutional mail and my declaration of deposit. I respectfully request that the docket reflect the prison mailbox rule mailing date. Thank you for your anticipated cooperation and professional courtesy.



In All honesty,



cc: Legal File

**DC-138A**

# CASH
# SLIP

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS

**1.  REQUISITIONING INMATE**

| DOC NUMBER | NAME (PRINT) | LOCATION | DATE |
|---|---|---|---|
| HF3762 | LEWIS | DA 1089 | 2.26.18 |

**2.  ITEMS TO BE CHARGED TO MY ACCOUNT**

Legal postage paid for mailing to :

Office of The Clerk
United States District Court
601 Market Street
Phila, PA 19106

| 3. INMATE'S SIGNATURE | 4. OFFICIAL APPROVAL |
|---|---|
| LEWIS | |

**5.  BUSINESS OFFICE'S SPACE**

| CHARGE ENTERED $ | DATE | BOOKKEEPER |
|---|---|---|
| | | |

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

Naseer Shakur, A/K/A DANIEL LEWIS   :
                 No._____
          Petitioner :

    v.              :

                 :
Cynthia Link,            HABEAS CORPUS

     Respondent       :

## DECLARATION OF MAILBOX DEPOSIT

I Naseer Shakur herein declare under penalty of law that I am on the 26th day of February depositing into the institutional mail my habeas corpus petition to the federal court at 601 Market Street in Philadelphia, PA. This declaration is made in compliance with the courts requirement that such declarations be made in order for pro se prison litigators to receive the benefit of the prison mailbox rule.

Naseer Shakur (LEWIS)
HF3762/SCI-Graterford
Box 244
Graterford, PA 19426

Date: _2.26.18_____

cc: Legal file