**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| DANIEL LEWIS, | : | |
| *Petitioner,* | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO.  18-1576 |
| CYNTHIA LINK, ET AL. | : | |
| *Respondents.* | : | |
| | : | |

<u>**RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS**</u>

Petitioner is a Pennsylvania state prisoner who confessed to killing the victim as part of a turf war among drug dealers.  A jury sitting before the Honorable Renee Cardwell Hughes of the Philadelphia Court of Common Pleas convicted him of first-degree murder, carrying a firearm without a license, and possessing an instrument of crime.  The trial court imposed a mandatory sentence of life imprisonment for murder and lesser terms for the remaining convictions.  Petitioner now seeks federal habeas relief.  His petition is untimely, and no relief is due.

<u>**FACTS AND PROCEDURAL HISTORY**</u>

The trial court summarized the underlying facts:

> At approximately 3 a.m. on August 4, 2005, Daniel Miller was standing with friends on the corner of Jasper and Lippincott Streets in Philadelphia.  At that time Miller saw the [petitioner] . . . run up Jasper Street with a revolver in his hand and turn onto Wishart Street.  The [petitioner] told Miller and his friends to "get out of here," so they left the corner for a few minutes.
>
> During this same time, Athena Ford . . . and her boyfriend Joe Morris were sitting on the front porch of their home [on Wishart Street in Philadelphia] . . . .

1

Stephen Dates . . . was inside the house. Tina saw the [petitioner] walk quickly down the street and, without permission, "storm" into her house. She heard three gunshots and immediately thereafter saw the [petitioner] leave the house. Miller and his friends had returned to the corner of Jasper and Lippincott Streets where they saw the [petitioner] with the gun in his hand, running fast from Wishart Street back down Jasper Street.

Stephen Bates came out of the front door, walked down the stairs and collapsed. At approximately 3:23 a.m. police responded to a call of shots fired and discovered Stephen Bates lying on the ground with a gunshot wound to the chest. He was taken to the hospital where he later died. The decedent suffered two through-and-through gunshot wounds, one through his upper back and the second through his left hip.

On August 31, 2005 police officer David Potter with his partner responded to gunshots in the 400 block of East Cambria Street in Philadelphia. The police observed the [petitioner] limping toward 447 East Cambria Street where he sat on the steps next to a trash can. The [petitioner] was taken to the hospital to be treated for a gunshot wound to the stomach. After the [petitioner] was taken to the hospital, Officer Potter recovered two (2) revolvers from a trashcan in front of 447 East Cambria Street.

At the hospital, [petitioner] was being guarded by a police officer. The [petitioner] told the officer that he had been shot by the Richard Allen boys, that he had been working the block at 1800 Wishart for ten years, and that these boys were trying to push him out. Later, two detectives came to question the [petitioner],

about the shooting at 1847 Wishart Street.  The [petitioner] told the detectives that the decedent was one of the Richard Allen boys and that on the day of the shooting the decedent had pulled a gun on him but that the [petitioner] walked away.  The [petitioner] then stated that he went to 1847 Wishart Street and "did what he had to do" using either the revolver or the "nine."  The bullets obtained from the decedent were determined to be of a thirty-eight/three-fifty-seven caliber and are the type of bullets shot from a revolver.

(J. Hughes 1925(b) Opinion, 2-3 (internal citations omitted).)

On September 19, 2007, a jury sitting before Judge Hughes convicted petitioner of first-degree murder, carrying a firearm without a license, and possessing an instrument of crime (CP-51-CR-1201581-2005).   Subsequently, Judge Hughes imposed a mandatory term of life imprisonment for murder, a concurrent term of two-and-one-half to five years for possessing an instrument of crime, and a consecutive term of three-and-one-half to seven years for carrying a firearm without a license.

On July 22, 2009, the Pennsylvania Superior Court affirmed the judgment of sentence. *Commonwealth v. Lewis*, 2566 EDA 2007 (Slip. Op. attached as Ex. A).  The Pennsylvania Supreme Court denied allowance of appeal on October 5, 2012.

On September 23, 2013, petitioner filed a petition under Pennsylvania's Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  After appointed counsel filed a no-merit letter, the PCRA court denied relief on January 19, 2017.  On October 17, 2017, the Pennsylvania Superior Court affirmed the denial of post-conviction relief.  *Commonwealth v. Lewis*, 757 EDA 2017 (Slip Op. attached as Ex. B).  Petitioner did not petition the Pennsylvania Supreme Court for allowance of appeal.

3

On February 6, 2018, petitioner filed an untimely second PCRA petition that did not raise any specific claims, nor did it raise any exceptions to the PCRA time bar.  The PCRA court denied the petition as untimely and meritless on March 29, 2018.  Petitioner did not appeal.

On April 11, 2018, petitioner delivered his federal habeas petition to the prison mailroom for mailing (ECF No. 1-1, Envelope; Official Cash Slip, attached as Ex. C).  Two days later, the instant federal habeas petition was received and docketed.

## **DISCUSSION**

**The petition is untimely.**

This petition is governed by Section 2254 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which imposes a strict, one-year statute of limitations for habeas petitions. *See* 28 U.S.C. § 2244(d)(1) ("A 1-year period of limitation shall apply . . . .").  The limitation period runs from the latest of:

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* (A)-(D).

Under AEDPA, the limitations clock is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  *Id.* § 2244(d)(2).

Equitable tolling may also be permitted if the petitioner demonstrates both "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citation and internal quotation marks omitted); *see Sistrunk v. Rozum*, 674 F.3d 181, 190 (3d Cir. 2012) ("This conjunctive standard requires showing both elements before we will permit tolling."). Mere "[e]xcusable neglect" is not enough to invoke equitable tolling. *LaCava v. Kyler*, 398 F.3d 271, 276 (3d Cir. 2005); *see Merritt v. Blaine*, 326 F.3d 157, 169 (3d Cir. 2003) ("[I]n non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the extraordinary circumstances required for equitable tolling." (citation and internal quotation marks omitted)).

Petitioner's federal habeas petition was due on February 26, 2018. The Pennsylvania Supreme Court denied allowance of appeal on direct appellate review on October 5, 2012. Petitioner's judgment therefore became final, and the limitations period began to run ninety days later on January 3, 2013, when his time for seeking certiorari in the United States Supreme Court expired. *See, e.g.*, *Jones v. Morton*, 195 F.3d 153, 157 (3d Cir. 1999) ("[A] state court criminal judgment becomes final, and the statute of limitations begins to run, at the conclusion of review in the United States Supreme Court or when the time for seeking certiorari review expires." (citation and internal quotation marks omitted)). After 263 days had expired, on September 23, 2013, petitioner tolled the limitations period by filing a timely PCRA petition in state court.[1] State collateral review ended on November 16, 2017, when his time for seeking allowance of appeal in

---

[1] Petitioner's untimely second PCRA petition had no tolling effect because it was not properly filed. *See, e.g.*, *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (holding that PCRA petition that is untimely is not "properly filed" under Section 2244(d)(2) and thus does not toll filing deadline).

the Pennsylvania Supreme Court expired.  Petitioner then had 102 days remaining, or until February 26, 2018, to petition for federal habeas relief.  Instead, he waited until April 11, 2018, which is the date he delivered his petition to the prison mailroom for mailing.  *See, e.g.*, *Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998) ("[A] pro se prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court.").

Petitioner falsely declares that he deposited his petition in the prison mail system on February 26, 2018, the day it was due.  Rather, he submitted his petition approximately six-weeks late on April 11, 2018, as indicated by the prison's copy of the postage cash slip for his federal habeas petition, which is attached as Exhibit C, as well as the postage mark on the envelope used to mail his habeas petition.  (Ex. C; ECF No. 1-1.)[2]  *Accord Stewart v. Folino*, No. 11-CV-6706, 2012 WL 912783, at *3 n.7 (E.D. Pa. Jan. 25, 2012) (M.J. Rice) ("I find it inconceivable that Stewart completed his petition and delivered it for mailing more than six weeks before the date stamped on the envelope.  Although it is reasonable to assume Stewart placed his federal petition in the prison mailing system a few days before it was postmarked, adding even a week to the filing date to account for a reasonable delay between mailing and postmarking would not render Stewart's petition timely."), *approved and adopted*,  2012 WL 917612 (E.D. Pa. Mar. 16, 2012). His petition is untimely.

Petitioner does not allege that any extraordinary circumstances stood in his way of timely filing.  There is nothing in the record indicating that he could not have timely filed.  So, equitable

---

[2] In addition, the office of inmate accounts at the prison has confirmed to respondents that petitioner did not purchase postage for mailing anything to federal court in February of 2018.

tolling is not warranted.  Because the petition is untimely, and petitioner has not alleged any exception to the time bar, his petition must be dismissed.[3]

## CONCLUSION

Respondents respectfully request that the petition for writ of habeas corpus be dismissed with prejudice and without a hearing.

Respectfully submitted,

/s/ *Douglas M. Weck, Jr.*

DOUGLAS M. WECK, JR.
Assistant District Attorney

/s/ *Max C. Kaufman*
MAX C. KAUFMAN
Supervisor, Federal Litigation

---

[3] Because the petition is time barred, respondents have not addressed the merits of petitioner's claims, or issues of exhaustion and procedural default.  Respondents will address those issues at the Court's request.

# Exhibit A

J. A15001/09

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA,<br>        Appellee | : IN THE SUPERIOR COURT OF<br>: PENNSYLVANIA<br>: |
| v. | :<br>: |
| DANIEL LEWIS,<br>        Appellant | :<br>: No. 2566 EDA 2007 |

Appeal from the Judgment of Sentence of
September 19, 2007 in the Court of Common Pleas of
Philadelphia County, Criminal, No. CP-51-CR-1201581-2005

BEFORE:    KLEIN, PANELLA and KELLY, JJ.

MEMORANDUM:                         **FILED JULY 22 , 2009**

Daniel Lewis appeals from the judgment of sentence imposed on his convictions for first-degree murder and weapons offenses. After reviewing the thorough brief filed by defense counsel, Daniel A. Rendine, Esquire, the Commonwealth's response, and the equally thorough opinion by the distinguished trial judge, the Honorable Renee Cardwell Hughes, we affirm on Judge Hughes' opinion.

Lewis raises nine issues in his Statement of Questions Involved, none of which has merit. We will discuss each one briefly.

**1.    Was the evidence at trial sufficient to support the convictions?**

Witness Daniel Miller saw Lewis (also known as "Troy") run down the street with a revolver, and then five to eight minutes later saw him run back toward him. Athena Ford testified that Lewis ran past her into a house where the victim, Steven Bates (known as "Blast") had just entered. Ford heard

J. A15001/09

three gunshots, and then Lewis rushed out of the house past her.  Bates came

out of the house and collapsed.   He later died from gunshot wounds to his

upper back and hip.

About two weeks later, Lewis was shot.   While in the hospital, when

asked about the Bates killing, he told an officer he "did what [he] had to do."

When asked if he had used two guns found in an adjacent trash can, Lewis

said, "No, I think I had the black revolver or the nine."   While Lewis argues

that he acted in self-defense or an unreasonable belief of self-defense, based

on the testimony above, the jury was certainly free to conclude that when

Lewis raced into a house, carrying a revolver and shooting the victim in the

back, he committed pre-meditated murder.

**2.    Did the trial court err in admitting evidence about two guns found in a trash can next to Lewis after he had been shot?**

The defense challenged the credibility of the police officers who took

Lewis's statement at the hospital, claiming the written statement was

fabricated.  The evidence about the guns was only admitted to show that since

there had been no test of the guns found next to Lewis, the statement was less

likely to be fabricated because when police took the statement they would

have known that these were *not* the guns.   Furthermore, the trial judge gave

an appropriate cautionary statement to the jury.

**3.    Did the trial court err in permitting Athena Ford to testify that she was pistol-whipped before the preliminary hearing?**

Ford initially said she initially did not tell police about the shooting inside

her house because she was scared, but she did tell them later and testified at

J. A15001/09

the preliminary hearing.  Lewis attempted to show that the police coerced Ford

into changing her story, and the evidence that she was pistol-whipped was

relevant to show that despite that obstacle, she still identified Lewis as the

shooter.  The trial judge gave a proper cautionary instruction, telling the jury

there was no evidence that Lewis had anything to do with the pistol-whipping.

**4.     Was the cross-examination of witness Daniel Miller improperly curtailed?**

Miller was a witness in an unrelated homicide.  It was made clear that

Miller had been cooperating with the police and therefore might have had bias.

However, there was no relevance to the *substance* of his testimony in the

unrelated homicide and, thus, no error in precluding it.

**5.     Did the trial court err in admitting a portion of a writing found by a corrections officer in Lewis's cell?**

A corrections officer found a note in Lewis's cell in which someone named

"Tryfe," who had been in jail for two years (as had Lewis), wrote that he was

angry and wanted revenge against "Fat Donnie" for snitching.  Because of the

nature of the case, it is reasonable to assume that this was Lewis's note, not

his cellmate's.  There is no right of privacy in a prison cell.  Circumstantial

evidence linked the note to Lewis.  We find no error.

**6.     Was there prosecutorial misconduct when the prosecutor said during closing argument that Lewis "hesitated" when he was asked to sign the bills of information with the not guilty plea?**

- 3 -

J. A15001/09

This remark was permissible because Lewis took the position that his signature was forged by police on the **Miranda**[1] waiver forms.   The evidence was that Lewis paused before signing the arraignment form to intentionally use a different signature (cursive writing) than was used on the **Miranda** forms (printed letters).   Moreover, the prosecutor's comment was a fair response to defense counsel's closing, in which the jury was asked to compare the signatures on the various documents.   Read as a whole, the prosecutor's closing was proper.

**7.**   **Did the trial court err in failing to give a *Kloiber*[2] charge?**

Both Ford and Miller testified that they knew Lewis before the shooting. They had difficulty making an identification from photographs.   The trial judge appropriately noted that fact in her charge, and specifically told the jury it could consider this when assessing credibility.   Under the facts of this case, it was not necessary to tell the jury it was required to consider the witnesses' testimony "with caution."

**8.**   **Did the trial judge give the jury an improper example of the difference between first- and third-degree murder?**

While the judge's example could have been clearer, considering the overall charge and the propriety of the definitions given, this does not require a new trial.

**9.**   **Did the trial court err in denying the motion to suppress Lewis's statements to police?**

---

[1]   **Miranda v. Arizona**, 384 U.S. 436 (1966).
[2]   **Commonwealth v. Kloiber**, 106 A.2d 820 (Pa. 1954).

- 4 -

J. A15001/09

There was testimony that before police questioned Lewis in the hospital where he was recovering from surgery for his later gunshot wound, he knowingly and voluntarily waived his *Miranda* rights.  With respect to Lewis's statement to Officer Segaline, who was guarding him in the hospital, this claim is waived because it was not raised in Lewis's motion to suppress or specifically in his Pa.R.A.P. 1925(b) statement.   In any event, Lewis, in casual conversation with Officer Segaline, said he was shot by "the Richard Allen boys," who were trying to muscle in on his drug turf.  This statement was volunteered and not the result of any interrogation by Officer Segaline.

We incorporate Judge Hughes' Pa.R.A.P. 1925(a) opinion into this memorandum and direct counsel to attach a copy in the event of further proceedings.

Judgment of sentence affirmed.


Judgment Entered.

Prothonotary

Date: JUL 2 2 2009

# Exhibit B

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| DANIEL LEWIS | |
| Appellant | No. 757 EDA 2017 |

Appeal from the PCRA Order January 19, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-1201581-2005

BEFORE:  LAZARUS, J., RANSOM, J., and PLATT, J.*

MEMORANDUM BY RANSOM, J.:                    **FILED OCTOBER 17, 2017**

Appellant, Daniel Lewis, appeals from the order entered January 19, 2017, denying his petition for collateral relief filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

We adopt the following procedural history from the PCRA court opinion, which in turn is supported by the record.  ***See*** PCRA Court Opinion (PCO), 1/20/17, at 1-3.  In September 2005, Appellant was arrested and charged with murder and related offenses.  Following a February 2007 mistrial, Appellant was convicted by a jury on September 19, 2007, of first-degree murder, firearms not to be carried without a license, and possession of an

---

* Retired Senior Judge assigned to the Superior Court.

CP-51-CR-1201581-2005 Comm. v. Lewis, Daniel
Appeal of Denial of PCRA Affirmed



8053836431

instrument of crime.[1]  That same day, Appellant was sentenced to mandatory life imprisonment and an additional three and one-half to seven years of incarceration.

Appellant's judgment of sentence was affirmed on appeal.  **See Commonwealth v. Lewis**, 981 A.2d 925 (Pa. Super. 2009) (unpublished memorandum).  In July 2010, Appellant *pro se* filed a PCRA petition.  In January 2012, he requested that his right to petition for allowance of appeal to the Pennsylvania Supreme Court be reinstated.  This request was granted, and the Supreme Court denied allowance of appeal.  **See Commonwealth v. Lewis**, 54 A.3d 437 (Pa. 2012) (unpublished memorandum).

In September 2013, Appellant *pro se* timely filed a PCRA petition, a request for leave to file an amended petition, a motion for production of transcripts and original discovery, and a request for discovery and **Brady/Giglio**[2] material.  The PCRA petition itself did not outline any claims Appellant wished to raise beyond checking boxes indicating he would raise claims of a violation of the Constitution of the Commonwealth or the United States, and ineffective assistance of counsel.

Counsel was appointed, but did not file an amended petition on Appellant's behalf.  In July 2016, the court appointed Gary Server, Esq., to

---

[1] **See** 18 Pa.C.S. §§ 2502(a), 6106, and 907, respectively.

[2] **See United States v. Giglio**, 92 S. Ct. 763 (1972); **Brady v. Maryland**, 83 S. Ct. 1194 (1963).

represent Appellant.  Attorney Server filed a **_Turner/Finley_**[3] letter and sought to withdraw representation.  The letter averred that Attorney Server had reviewed Appellant's motions and the records and had contacted him for clarification.  The court indicates that Appellant mailed a letter indicating he would respond to the **_Finley_** letter.  However, this letter was not filed and does not appear on the docket or in the certified record.  On September 29, 2016, the court sent Appellant notice pursuant to Pa.R.Crim.P. 907 that his petition would be dismissed without a hearing.

The court indicates that on October 21, 2016, Appellant mailed a response to the **_Finley_** letter raising additional claims.  However, this letter was not filed and does not appear on the docket or in the certified record. Attorney Server filed an amended **_Finley_** letter on December 15, 2016.  By letter dated December 15, 2016, and post-marked December 27, 2016, Appellant filed a motion requesting additional time to file a response to the notice of intent to dismiss and **_Finley_** letter.  He claimed that he mistakenly sent his responses directly to the court and not the filing office and that Attorney Server's **_Finley_** letter was in legal error.  Appellant did not raise additional or specific claims.

On January 20, 2017, the court formally dismissed Appellant's petition by order and opinion.  It did not order him to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal or issue a further opinion.

---

[3] **_See Commonwealth v. Turner_**, 544 A.2d 927 (Pa. 1998); **_Commonwealth v. Finley_**, 550 A.2d 213 (Pa. Super. 1998).

- 3 -

On appeal, Appellant raises the following questions for our review:

A. Is PCRA counsel's *Finley* letter holding that Appellant's PCRA is frivolous and the record of his case contains no meritorious claims and the [court's] agreement with the *Finley* letter in legal error, when the record contains meritorious claims that are apparent and appellant presented meritorious claims?

B. Did PCRA counsel and [the court] commit legal error in his *Finley* by holding as meritless appellant's claim that Judge Hughes abused discretion in denying defense motion to recuse based on prejudice/biasness [*sic*] judicial misconduct that created the appearance of impropriety, and appellant counsel wasn't ineffective for failing to raise issue on appeal?

C. Did PCRA counsel and [the court] commit legal error by using *Finley* to hold as meritless appellant's claim that Judge Hughes committed bad faith judicial misconduct that denied appellant a fair trial and due process and that appellate counsel wasn't ineffective for failing to raise issue [*sic*] on appeal?

D. Did PCRA counsel and [the court] commit legal error by using *Finley* to hold as meritless appellant's claim that Judge Hughes abused her discretion in denying defense motion to disqualify a biased juror who had engaged in jury misconduct/ex parte contact with a commonwealth witness and appellate counsel wasn't ineffective for not raising issue on appeal?

Appellant's Brief at vii.[4]

Initially, we note several deficiencies in Appellant's brief. He does not include a proper statement of the scope and standard of review. **See** Pa.R.A.P. 2111(a)(3). Additionally, it contains a number of exhibits in the reproduced record which were not included in the certified record below. **See** **Commonwealth v. Preston**, 904 A.2d 1, 6 (Pa. Super. 2006) (noting that

---

[4] Appellant's brief was untimely filed. However, on September 1, 2017, Appellant filed an application for relief, requesting that we consider his brief timely filed. We grant his application and will consider the merits of his brief.

matters not of record cannot be considered on appeal, and an appellate court is limited to considering only the materials in the certified record). However, based upon our resolution of Appellant's issues, we need not find waiver on that basis.

We review an order denying a petition under the PCRA to determine whether the findings of the PCRA court are supported by the evidence of record and free of legal error. ***Commonwealth v. Ragan***, 923 A.2d 1169, 1170 (Pa. 2007). We afford the court's findings deference unless there is no support for them in the certified record. ***Commonwealth v. Brown***, 48 A.3d 1275, 1277 (Pa. Super. 2012) (citing ***Commonwealth v. Anderson***, 995 A.2d 1184, 1189 (Pa. Super. 2010)).

Appellant raises a number of issues of ineffective assistance of counsel. However, claims that are not raised in a PCRA petition may not be raised for the first time on appeal. ***See Commonwealth v. Rigg***, 84 A.2d 1080, 1084 (Pa. 2014); ***see also*** Pa.R.A.P. 302(a). Appellant filed a number of motions in the court below, but did not plead and preserve these issues in his PCRA petition. The PCRA petition itself states only that he seeks to raise issues of constitutional violations and ineffective assistance of counsel, but Appellant never articulated his claim. Nor did Appellant seek leave to amend his petition. ***See***, ***e.g.***, ***Commonwealth v. Mason***, 130 A.3d 601, 627 (Pa. 2015); ***see also*** Pa.R.C.P. 905(A). Accordingly, all claims related to trial and appellate issues are waived. ***See Riggs***, 84 A.2d at 1084; Pa.R.A.P. 302.

- 5 -

Additionally, Appellant's claims related to PCRA counsel's ineffectiveness are waived.   Such a claim may be raised in a response to the court's Pa.R.Crim.P. 907 notice. ***See***, ***e.g.***, ***Commonwealth v. Henkel***, 90 A.3d 16, 20 (Pa. Super. 2014), *appeal denied*, 101 A.3d 785 (Pa. 2014).   However, the notice, issued September 26, 2016, provided that Appellant must file a response within twenty days.   Appellant did not file a response until December 27, 2016, far beyond the provided time period.   Accordingly, he has waived his issue for purposes of appeal.

Counsel was properly permitted to withdraw after fulfilling the requirements of ***Turner/Finley***.   Where counsel determines that there are no meritorious issues raised in a PCRA petition, and the court agrees, counsel may withdraw after filing a "no merit" letter. ***See Turner***, 544 A.2d at 928-29; ***Finley***, 550 A.2d at 215.   Specifically, 1) counsel must detail the nature and extent of his review; 2) counsel must list each issue the petitioner wishes to have reviewed; 3) counsel must explain why petitioner's issues are meritless; 4) the PCRA court conducts its own independent review of the record; and 5) the PCRA court agrees with counsel that the petition is meritless.   ***Id.***   Attorney Server complied with the requirements of ***Turner/Finley***, and the PCRA court conducted its own review of the record and found Appellant's issues to be meritless.   Accordingly, there was no error in the court's order granting counsel's petition to withdraw and dismissing the PCRA petition. ***Brown***, 48 A.3d at 1277.

Application for relief granted.   Order affirmed.   Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/17/2017</u>

# Exhibit C

**DC-138A**

# CASH SLIP

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS

Received in Mailroom 4/11/18

## 1. REQUISITIONING INMATE

| DOC NUMBER | NAME (PRINT) | LOCATION | DATE |
|---|---|---|---|
| HF3762 | LEWIS | DA 1089 | 2·26·18 |

## 2. ITEMS TO BE CHARGED TO MY ACCOUNT

Legal postage paid for mailing to:

Office of The Clerk
United States District Court
601 Market Street
Phila, PA 19106

$ 2.68

| 3. INMATE'S SIGNATURE | 4. OFFICIAL APPROVAL |
|---|---|
| LEWIS | |

## 5. BUSINESS OFFICE'S SPACE

| CHARGE ENTERED | DATE | BOOKKEEPER |
|---|---|---|
| $ | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DANIEL LEWIS, | : | |
| *Petitioner,* | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO.  18-1576 |
| CYNTHIA LINK, ET AL. | : | |
| *Respondents.* | : | |
| | : | |

## CERTIFICATE OF SERVICE

I, DOUGLAS M. WECK, JR., counsel for respondent, hereby certify that on December 21, 2018, I caused a true and correct copy of the foregoing response and exhibits to be served upon petitioner by first-class mail:

Daniel Lewis, HF3762            Smart Communications/PA DOC
SCI-Phoenix                     Daniel Lewis, HF3762
Box 244                         SCI-Phoenix
Collegeville, PA 19426          PO Box 33028
                                St. Petersburg, FL 33733


                                /s/ *Douglas M. Weck, Jr.*
                                DOUGLAS M. WECK, JR.
                                Assistant District Attorney
                                Office of the District Attorney of Philadelphia
                                Federal Litigation Unit
                                Three South Penn Square
                                Philadelphia, PA 19107
                                (215) 686-5736